# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2008

No. 07-20325
Summary Calendar

Charles R. Fulbruge III
Clerk

DANIEL H STINGER

Plaintiff-Appellant

v.

CHASE BANK, USA, NA; JP MORGAN CHASE BANK, NA

Defendants-Appellees

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-1702

---

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Daniel H. Stinger ("Stinger") appeals the district court's grant of a motion by Defendants-Appellees Chase Bank USA, N.A. ("Chase") and JPMorgan Chase Bank, N.A. ("JPMC") to compel arbitration of a credit card dispute. For the following reasons, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stinger has two Chase credit card accounts: (1) a MasterCard account he opened with Chase on February 18, 2003, and (2) a Visa account he opened with Bank One on November 2, 2004, ownership of which was transferred to Chase shortly after the account became active.[1] Chase Segment Senior Director Donna Barrett ("Barrett") stated in an affidavit that she had reviewed Chase's records related to Stinger's accounts and that when Chase sent Stinger his credit card for each account, it also sent him a Cardmember Agreement ("CMA") that established the terms of each account. Each CMA provided that it would become effective when the cardholder used the card, and it is undisputed that Stinger used both cards. Stinger stated in an affidavit that he has never seen the CMAs and has not agreed to be bound by them.

Each CMA contains an arbitration provision. The MasterCard arbitration provision states, in part,

> Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account, or the advertising application, or approval of your Account will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning.

---

[1] Shortly after Stinger's account became active, Bank One Corporation merged with JPMC, which led to a transfer of ownership of Stinger's account to Chase.

The MasterCard CMA also provides, however, that certain claims seeking up to $25,000 "may be resolved by litigation" and are "not subject to arbitration."

The VISA CMA's arbitration provision states,

Either you or we may, without the other's consent, elect mandatory, binding, arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the [CMA], any prior [CMA], your credit card Account or the advertising, application, or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire [CMA] or any prior [CMA]. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

The Visa CMA also contains an exception to the arbitration agreement for claims brought in small claims court.

The MasterCard CMA provided that Chase could amend it at any time. In September 2003, Chase sent Stinger a notification of amendments to the CMA, including some that altered the allocation of arbitration costs. The notification provided that the changes would become effective unless Stinger objected in writing by October 25, 2003. Barrett stated that it was Chase's routine practice to note in a cardmember's account when mail was returned or the cardmember sent correspondence and that Chase's records do not reflect that the notification was returned or that Stinger notified Chase of his refusal to accept the change in terms. Stinger continued to use the MasterCard after the effective date of the amendments.

In April 2006, Stinger filed a petition in Texas state court asserting several claims against Chase and JPMC.[2] These claims related to his allegation that in July 2005, Chase reduced Stinger's credit limits on both cards, which led it to dishonor a credit card courtesy check Stinger had written and attempted to deposit in his checking account. Chase removed the action to federal court on the basis of diversity of citizenship and filed a motion to compel arbitration of Stinger's claims. The district court granted the motion, and Stinger appeals. We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(3).

## II. DISCUSSION

We review an order compelling arbitration de novo. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Ref. & Supply Co., 449 F.3d 616, 619 (5th Cir. 2006). We review factual findings for clear error. Cal. Fina Group, Inc. v. Herrin, 379 F.3d 311, 315 (5th Cir. 2004).

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. In evaluating a motion to compel arbitration, we must first determine "whether the parties agreed to arbitrate the dispute in question." Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006) (internal quotation marks omitted). This determination requires examination of two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Id. (internal quotation marks omitted). To address these questions, "courts generally . . . should apply

---

[2] Stinger asserted claims for breach of the covenant of good faith and fair dealing; tortious interference with his contract with Bank of America; violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46; breach of contract; conversion; fraud and negligent misrepresentation; economic duress; and breach of fiduciary responsibility.

ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).[3] However, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989). Finally, we determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Tittle, 463 F.3d at 418 (internal quotation marks omitted).

A. Existence and scope of the arbitration agreements

First, Stinger argues that no valid agreement to arbitrate existed between him and Chase because he never received the CMAs. Given that Stinger's only evidence was his own unsupported statement that he had not received either CMA, the district court did not commit clear error when it decided to credit Barrett's statement that Chase did send Stinger the CMAs along with his credit cards. Cf. Wells Fargo Bus. Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1982) (noting that a properly mailed letter may be presumed to have been received). It is undisputed that both CMAs provided they would become effective upon use of the cards and that Stinger used both cards. Under ordinary contract principles, a party may be bound by an agreement even in the absence of a signature, provided that the actions of the parties reflect a mutual intent to be bound. See Valero Ref. Inc. v. M/T Lauberborn, 813 F.2d 60, 64 (5th Cir. 1987); Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609-10 (Tex. 1972). By using the cards, Stinger demonstrated an intent to be bound by the terms of the CMAs and thus agreed to the arbitration provisions in the CMAs.

Second, Stinger suggests that the district court should not have ordered arbitration because the arbitration provisions in the CMA apply only to claims

---

[3] The parties apparently do not dispute that Texas law applies to determine whether a contract was formed in this case.

exceeding $25,000, and the district court did not inquire into whether Stinger's claims exceeded $25,000. This argument is without merit. In his complaint, Stinger did not specify the amount of relief he sought. However, Chase convincingly demonstrated in its Statement of Basis for Removal that the value of Stinger's claims was well over $75,000. Stinger has made no argument, either before this court or at the district court level, that he is seeking less than $25,000. Therefore, the district court properly applied the arbitration provision to his claims. We also note that Stinger's claims are clearly within the scope of both CMAs' broad arbitration clauses, which include claims "relating in any way" to his credit card accounts.

Third, Stinger argues that he need not arbitrate his claims against JPMC because JPMC was not a signatory to either CMA. However, a non-signatory to a contract with an arbitration clause can compel arbitration under an equitable estoppel theory where the claim against the non-signatory is dependent upon the contract containing the arbitration clause. Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527-28 (5th Cir. 2000). Moreover, "whether to utilize equitable estoppel in this fashion is within the district court's discretion; we review to determine only when it has been abused." Id. at 528. Because Stinger's claims against JPMC relate to his credit card issuer's obligations to him, those claims are dependent upon the contracts he entered into with Chase regarding the cards. Thus, the district court did not abuse its discretion by requiring Stinger to arbitrate his claims against JPMC.

In sum, the district court properly concluded that an arbitration agreement existed and that the agreement covers Stinger's claims.

B.    Unconscionability of the arbitration agreements

Stinger contends that even if he agreed to the terms of the CMAs, they and the arbitration agreements in them are unconscionable. Whether the contract as a whole is unconscionable must be determined through arbitration. See

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) (stating that "a challenge to the validity [of a contract] as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); Overstreet v. Contigroup Cos., 462 F.3d 409, 411 n.1 (5th Cir. 2006) (declining to address whether a contract as a whole was unconscionable because "federal courts are limited to reviewing the arbitration clause itself"). Thus, we will decide only whether the arbitration clauses are unconscionable.

To determine what state's law applies to the question of unconscionability, we use Delaware law, pursuant to the choice of law provisions in the CMAs.[4] See Overstreet, 462 F.3d at 411-12 (applying a choice of law provision to determine the law governing the unconscionability of an arbitration clause in a case where both the arbitration clause and the agreement as a whole were attacked as unconscionable); DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677-78 (Tex. 1990) (holding that under Texas choice of law principles, contractual choice of law provisions are generally upheld). Under Delaware law, a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." Tulowitzki v. Atl. Richfield Co., 396 A.2d 956, 960 (Del. 1978) (internal quotation marks omitted). "[M]ere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability." Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912 (Del. 1989). Rather, "[a] court must find that the party with superior bargaining power used it to take advantage of his weaker counterpart. For a contract clause to be

---

[4] Stinger does not address the issue of choice of law in his brief. However, he cites only cases applying California law. Given that Stinger is a Texas resident, Chase is a Delaware bank, JPMC is an Ohio bank, the contract provides for Delaware law, and Stinger offers no rationale for using California law, we decline to use California law to resolve this dispute.

unconscionable, its terms must be so one-sided as to be oppressive." Id. (internal quotation marks omitted).

Stinger contends that the arbitration provisions are unconscionable because (1) they are contracts of adhesion imposed by a party with superior bargaining power; (2) he had no meaningful choice about whether to accept them because all credit cards contain similar provisions and he is a business traveler who needs a credit card; and (3) Chase's amendment of the arbitration agreements by enclosing new terms along with his credit card bills constituted unfair surprise. However, the cases Stinger cites in support of his argument are neither binding on this court nor factually similar to this case,[5] and Stinger's arguments are without merit under Delaware law.

First, as noted above, the fact that Chase had superior bargaining power cannot establish unconscionability unless the contract contains oppressive, one-sided terms. The arbitration provisions in the CMAs were not one-sided, but bilateral: were Chase to bring claims against Stinger, Stinger could compel arbitration. Second, Stinger cites no legal authority for his argument that a "lack of meaningful choice" renders an arbitration agreement unconscionable. Moreover, Stinger did have a choice—he could have rejected the terms Chase offered and either adjusted his travel plans or used other forms of payment such as bank-issued check cards. Third, Stinger's unfair surprise argument is

---

[5] All of the cases Stinger cites apply California law and are factually distinguishable from this case. See Armendariz v. Found. Health Psychare Servs., Inc., 24 Cal.4th 83, 114, 117-18 (2000) (holding unconscionable an arbitration agreement requiring employees to arbitrate claims against the employer but not requiring the employer to arbitrate claims against the employees); Badie v. Bank of Am., 79 Cal. Rptr. 2d 273, 288-89 (Cal. Ct. App. 1998) (holding that a credit card company could not introduce an alternative dispute resolution provision through a "bill stuffer" where nothing in the original agreement mentioned dispute resolution); Carboni v. Arrospide, 2 Cal. Rptr. 2d 845, 850-51 (Cal. Ct. App. 1991) (holding unconscionable loan terms with an extraordinarily high interest rate); A & M Produce Co. v. FMC Corp., 186 Cal. Rptr. 114, 126 (Cal. Ct. App. 1982) (holding unconscionable a disclaimer of warranties under the Uniform Commercial Code where there was "allocation of commercial risks in a socially or economically unreasonable manner").

without merit. Under Delaware law, a credit card issuing bank may unilaterally add or alter an arbitration provision to a credit card agreement by sending notice and giving the cardholder an opportunity to send notice to the bank of a rejection of the amendment. Edelist v. MBNA Am. Bank, 790 A.2d 1249, 1257-1260 (Del. Super. Ct. 2001); see also DEL. CODE. ANN. tit. 5 § 952(a).

We also note that courts applying Delaware law have consistently rejected claims that arbitration clauses in credit card agreements are unconscionable. See, e.g., Heiges v. JP Morgan Chase Bank, N.A., No. 3:07CV1157, 2007 WL 3166769, at *6-*7 (N.D. Ohio Oct. 26, 2007) (holding that an arbitration provision in a credit card cardholder agreement was not unconscionable); Carmack v. Chase Manhattan Bank (USA), No. C 07-02124, 2007 WL 3274151, at *7 (N.D. Cal. Aug. 3, 2007) ("Credit card agreements containing arbitration clauses are not unconscionable in either California or Delaware when they bind both parties equally."); Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 920 (N.D. Tex. 2000) (holding that a credit card arbitration provision "presented in a take-it-or-leave-it-manner" was not unconscionable). Similarly, the arbitration agreement between Chase and Stinger was not unconscionable.

## III. CONCLUSION

Stinger and Chase entered into a valid agreement to arbitrate Stinger's claims, and that agreement was not unconscionable. Therefore, we AFFIRM the judgment of the district court.

AFFIRMED.