Filed 1/31/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRUNO FLEMING,<br><br>      Plaintiff and Respondent,<br>v.<br><br>OLIPHANT FINANCIAL, LLC.,<br><br>      Defendant and Appellant. | A165837<br><br>(Santa Clara County<br>Super. Ct. No. 20CV363729) |

Before a trial court may grant a motion to compel arbitration it must necessarily determine if a valid agreement exists to arbitrate the dispute. This is a requirement set forth in the Federal Arbitration Act (9 U.S.C. § 2 et seq., FAA) and the California Code of Civil Procedure. (Code Civ. Pro. § 1281.2.) This appeal raises a single issue: Did Oliphant Financial, LLC (Oliphant) meet its burden in proving the existence of a valid arbitration agreement with Bruno Fleming, which would then allow the trial court to compel the arbitration of a financial dispute between these two parties? The trial court determined that Oliphant did not meet this initial burden. The court's apt conclusion stemmed from the evaluation of the undisputed evidence that Oliphant never provided any agreement, let alone one including a provision for arbitration, to Fleming. This necessarily foreclosed his ability to consent to arbitration. In the absence of evidence demonstrating the existence of any agreement, the trial court properly denied the motion to compel arbitration. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2020, Fleming filed a complaint against Oliphant. The class action complaint included a single cause of action for the alleged violation by Oliphant of the California Rosenthal Fair Debt Collection Practices Act. (Civ. Code, § 1788 et seq.) Oliphant subsequently filed a petition to compel arbitration. Oliphant's petition sought to dismiss Fleming's class action claims and compel binding arbitration of his individual claims under the FAA.

The declaration of Michael Crossan, the custodian of records for Oliphant, supported the petition. According to Crossan's declaration, Fleming electronically applied for a Barclay Rewards credit card from Barclays Bank Delaware (Barclays) on December 1, 2013. The electronic application included no reference to an arbitration agreement. Fleming received a Barclay Rewards credit card after Barclays approved his application.[1] Fleming used his credit card for purchases and made payments on his account. He received account statements. As with the electronic application, the account statements did not include any reference to arbitration. The statements did provide: "Please refer to your Cardmember Agreement for additional information about the terms of your Account." All of the account statements submitted to the trial court for review were from 2017 and 2018.

---

[1] After the initial approval of the application by Barclays, a number of transfers occurred among various entities in 2017 and 2018 for a "pool of credit card receivables." The path traversed the following course: from Barclays to First Bank and Trust, then to CC Receivables Acquistion, LLC, then to CreditShop Credit Card Company, LLC, and finally to Oliphant.

There is no evidence in the record of any signed agreement between Barclays and Fleming. Additionally, Oliphant provided no evidence that it even sent such an agreement to Fleming, along with the resultant absence of evidence of when or how such an agreement might have been sent to him. Instead, Oliphant proffered three separate Cardmember Agreements—or exemplars—that were in effect (1) when Fleming opened his account in December 2013, (2) when he made his last payment to the account in March 2018, and (3) when the account was charged-off in May 2018. The language in all three exemplars regarding the arbitration agreement is the same.[2]

Fleming filed an opposition to the petition. In support of his opposition, he filed a declaration in which he denied ever agreeing to settle any disputes through arbitration or ever receiving an arbitration agreement, much less any of the three exemplars.[3] Oliphant filed a reply that included a second

---

[2] The arbitration provision in all three exemplars states the following: "At the election of either you or us, any claim, dispute or controversy ('Claim') by either you or us against the other, arising from or relating in any way to this Agreement or your Account, or their establishment, or any transaction or activity on your Account, including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement) Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, shall be resolved exclusively by arbitration . . . . If any Claim is advanced in a court, arbitration may be elected under this provision instead, and the right to elect arbitration shall not be deemed to have been waived if the election is made at any time before commencement of trial."

[3] As part of his opposition, Fleming also made many evidentiary objections to Crossan's declaration. He also questioned the transfer of any purported right to compel arbitration because Oliphant was the fourth transferee since the inception of the account. For purposes of this opinion, we assume without deciding that the challenged evidence was properly before the trial court and that a valid assignment exists.

affidavit from Crossan.  This second affidavit did not materially alter the substantive aspects of his earlier affidavit, relative to the arbitration issue.  A hearing on the petition took place on March 3, 2021.  On April 28, 2021, the trial court issued its order denying Oliphant's  petition to compel arbitration.  This appeal followed.

## II.

## DISCUSSION

### A.    *Standard of Review*

A trial court decides the facts when considering a motion to compel. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) " 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.' " (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)  Since the only facts the trial court relied upon were not in dispute, this also points to a de novo review of the trial court's denial of arbitration.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) Against this legal backdrop, it is important to note that the party seeking arbitration bears the burden of proving the existence of an arbitration agreement.  (*Id.* at 236.)

### B.    *Compelling Arbitration Where Agreement Exists*

Before Congress's passage of the United States Arbitration Act of 1925, the courts viewed arbitration warily, if not with outright hostility. (*Kulukundis Shipping Co. v. Amtorg Trading Corp.* (2nd Cir. 1942) 126 F.2d 978, 984–985.)  These views significantly abated over the last century.  The

4

enactment of various state laws facilitated arbitration and reflected the increasing receptiveness by legislatures to it. (See e.g., Code Civ. Pro. § 1281.2 et seq.) Subsequent court decisions have further buttressed the generally favorable view of arbitration. "The policy of California law is to recognize and give the utmost effect to arbitration agreements." (*Loscalzo v. Federal Mut. Ins. Co.* (1964) 228 Cal.App.2d 391, 398.) The historical trajectory of arbitration reveals that no judicial reluctancy occurs in compelling arbitration when the parties have previously agreed to it, and no other legal impediments preclude it.

### 1. Threshold Question under State and Federal Law

In evaluating whether a disputed matter requires arbitration, the focus is preliminarily placed on any agreement by parties to do so. " 'Under "both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate." ' " (*Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 861 (*Long*); see also *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460.) The threshold question requires a response because if such an agreement exists, then the court is statutorily required to order the matter to arbitration. Code of Civil Procedure § 1281.2 provides, in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." (See also *Gordon v. Atria Management Co., LLC* (2021) 70 Cal.App.5th 1020, 1026 ["a trial court shall order arbitration if an agreement to arbitrate exists."].) This initial issue also reflects the very plain principle that you cannot compel individuals or entities to arbitrate a dispute

when they did not agree to do so. "[T]here is no policy compelling persons to accept arbitration of controversies that they have not agreed to arbitrate." (*Long, supra,* 245 Cal.App.4th at 861.)

Federal law is wholly congruent with these principles.[4] As the United States Supreme Court observed two decades ago: "Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' [citation omitted] we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 294 (*EEOC*).) "For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582.)

### 2. *Delegation of Arbitrability Question – Who Decides?*

Who then decides at the outset whether an agreement exists—a judge or arbitrator? Oliphant contends that an arbitrator must decide the question of arbitrability in the first instance because the agreement stated "[c]laims regarding the applicability of this arbitration provision or the validity of the entire Agreement, shall be resolved exclusively by arbitration." This contention is accurate only to the extent that both Oliphant and Fleming

---

[4] 9 U.S.C. section 3 provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

indisputably made such a delegation to the arbitrator.  As the United States Supreme Court recently observed: "This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. [Citations omitted.]" (*Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. ___ [139 S.Ct. 524, 530]; see also *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 654 [" 'Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability.' "].)  It becomes evident from the record on appeal that Oliphant cannot provide clear and unmistakable evidence that the parties intended an arbitrator to decide the initial arbitrability question.  Oliphant adamantly argues that an agreement occurred between the parties, and Fleming argues in equally unwavering terms that it did not.

When faced with disparate contentions, the Supreme Court has provided further clarification to resolve the question about who decides.  "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (*Henry Schein, Inc. v. Archer & White Sales, Inc., supra,* 139 S.Ct. at 530, citing 9 U.S.C., § 2; see *Granite Rock Co. v. Int'l Bhd. of Teamsters* (2010) 561 U.S. 287, 299–300 ["Applying this principle, our precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.  [Citation.]  Where a party contests either or both matters, 'the court' must resolve the disagreement."]; see also *Suski v. Coinbase, Inc.,* (9th Cir., Dec. 16, 2022, No. 22-15209) ___ F. 4th ____ [2022

7

U.S. App. LEXIS 34806 at *4] (*Suski*) ["Issues of contract formation may not be delegated to an arbitrator."].) Consequently, the circumstances required a judicial determination about arbitrability.

### 3. *California Law Related to Contract Formation and Consent*

Our focus then is primarily placed on California law to address the issues surrounding the claimed agreement. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944; see also *Suski , supra,* ___ F. 4th at p. ___ [2022 U.S. App. LEXIS 34806 at *8] ["When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation," citing *Holl v. U.S. Dist. Court (In re Holl)* (9th Cir. 2019) 925 F.3d 1076, 1083].) More specifically, we look to California law regarding contracts. "An arbitration agreement is subject to the same rules of construction as any other contract." (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1221.) The existence of a contract under California law requires four essential elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration. (Civ. Code, § 1550.)

Grasping the nettle of this appeal, we turn to one of those elements—consent—that creates the sharp dispute between Oliphant and Fleming. Oliphant claims that consent to the arbitration agreement existed; Fleming makes the contrary claim that it did not. Due to this dispute, we must necessarily examine the statutory requirements related to consent. California law provides clarification that the consent of the parties to a contract must be free, mutual, and communicated by each to the other. (Civ. Code, § 1565; see also Civ. Code, § 1580 ["Consent is not mutual, unless the

parties all agree upon the same thing in the same sense."].) These three factors inevitably serve as the guideposts, as they did for the trial court, in evaluating and determining the legal appropriateness of compelling arbitration. In analyzing the petition to compel arbitration, the trial court focused on the consent issue, and in particular, on the absence of mutual assent. It observed: "Absent evidence of mutual assent, Defendant cannot show that the cardmember agreements are enforceable arbitration agreements. *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 381 ['An essential element of any contract is the consent of the parties, or mutual assent.']" Additionally, the trial court observed, "[d]efendant does not explain how Plaintiff could have consented to any agreement that he was not provided." The trial court's well-directed attention on the absence of consent (i.e., the consent was neither mutual nor communicated) proved decisive in denying the motion to compel arbitration. And rightly so. (*Ahlstrom v. DHI Mortg. Co., L.P.,* (9th Cir. 2021) 21 F.4th 631, 635 ["If no agreement to arbitrate was formed, then there is no basis upon which to compel arbitration."].) Indeed, Oliphant had ultimately failed to provide the necessary evidence supporting its assertion that Fleming consented to arbitration. "While both the Federal Arbitration Act . . . and California law favor arbitration, a party is not required to arbitrate his or her claims absent consent. [Citations omitted.]." (*Costa v. Road Runner Sports, Inc.* (2022) 84 Cal.App.5th 224, 233; see *Pinnacle, supra,* 55 Cal.4th at 236 ["it is a cardinal principle that arbitration . . . 'is a matter of consent, not coercion' "]; see also *EEOC, supra,* 534 U.S. at 294 [" 'Arbitration under the FAA is a matter of consent, not coercion.' [Citation.]"].)

A final point remains about the substantive law that applies to the reputed agreement. Oliphant summarily asserts that the agreement is

9

governed by Delaware law. A hint of a conundrum inevitably arises by Oliphant's assertion of the need to apply Delaware law in accord with the agreement—where the agreement's very existence is questionable. This assertion is ultimately unpersuasive. First, the lack of any overall agreement necessarily draws the inference about a similar lack of provision for a choice of law. Second, Oliphant cites no Delaware statute in its opening brief, and only passingly refers to a single Delaware case (i.e., *Grasso*). The *Grasso* case cited by Oliphant involves facts disparate from those in this appeal. (*Grasso v. First USA Bank* (1998) 713 A.2d 304, 309 ["A short time later, Grasso received her credit card, along with First USA's Agreement. The Agreement set forth the terms of the credit card account."].) These stark deficiencies appear to concede that Delaware law is inapplicable. Third, what also becomes apparent is that California law concerning contractual construction parallels Delaware law. For instance, in *Eagle Force Holdings, LLC v. Campbell* (2018) 187 A.3d 1209, 1212, the Delaware Supreme Court observed that situations present themselves "where determining something as seemingly simple as whether a contract was formed proves a challenging endeavor." Similar to California law, Delaware law places emphasis on the party's intent to be bound to the contract. (*Id.* at pp. 1229–1230 ["As such, in applying this objective test for determining whether the parties intended to be bound, the court reviews the evidence that the parties communicated to each other up until the time that the contract was signed—*i.e.*, their words and actions—including the putative contract itself."].) Accordingly, any analysis under Delaware contractual law on the issues raised by Oliphant's appeal would appear to be substantially comparable to that under California contractual law. Since no agreement exists under either California or

10

Delaware law, California and federal law provide the proper framework for the evaluation of the legal issues.

## C.     *Further Issues Concerning Arbitrability*

As the trial court correctly concluded, Oliphant's petition to compel arbitration failed to produce sufficient evidence that Fleming consented to the agreement that would have compelled arbitration.  The failure occurs whether assessing a purported express agreement or implied one.  Regarding an express agreement, the trial court properly observed that Oliphant did not contend that Fleming "signed any agreement other than the electronic application for the credit card, and that application does not contain [an] arbitration agreement."  In the absence of a signed agreement, Oliphant argued that Fleming agreed to arbitrate any disputes through his use of the credit card (i.e., an implied agreement).  We now evaluate this argument, which mirrors a similar argument recently rejected by the Fourth District in *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583 (*Chambers*).

In *Chambers,* the defendant creditor sought to compel the plaintiff to arbitration, asserting that "Chambers accepted the arbitration agreement by using her credit card after receiving the terms of the account agreement and failing to opt out of its arbitration clause."  (*Id*. at p. 591.)  In opposing the motion to compel arbitration, Chambers denied ever having received the account agreement from the defendant.  (*Id*. at p. 589.)  This failure to transmit the agreement—not statements reflecting that the plaintiff's credit card purchases were made and payments were posted—was key to the appellate inquiry concerning the trial court's denial of the motion to compel arbitration.  (*Ibid*.)  While the *Chambers* court extensively discussed the admissibility or inadmissibility of various records or testimony that might

11

have proved the arbitration agreement had been sent, these evidentiary questions all eventually orbited around the more central issue of consent: "As the moving party, Crown had the burden of establishing through admissible evidence that Chambers had agreed to arbitrate the dispute." (*Id.* at p. 590, fn. 1.) In affirming the trial court's denial of the motion to compel arbitration, the Court of Appeal discounted statements from Crown about the alleged absence of any "objection to the arbitration agreement or its return as undeliverable," observing that "[w]ithout a predicate showing that Chambers was mailed the arbitration agreement, these statements do not establish her consent." (*Id.* at p. 602.)

In this appeal, the very same issue arises about consent. The absence of consent unavoidably follows from the dearth of evidence establishing that Fleming ever received the agreement. As the trial court emphasized, "Defendant does not explain how Plaintiff could have consented to any agreement that he was not provided." Recognizing this deficiency, Oliphant again argues that Fleming's use of the credit card bound him to the arbitration clause. Oliphant cites a number of cases in ostensible support of this proposition, but nearly all of them are factually and legally distinguishable because they involved failing to read an arbitration provision or opt out of it.[5]

---

[5] Courts have enforced arbitration agreements against parties for failing to read or opt out of them, as Oliphant notes. In all the following cases that Oliphant cites, however, the party indisputably received the agreement. (See *Hill v. Gateway 2000, Inc.* (7th Cir. 1997) 105 F.3d 1147, 1148 [failure to read contract]; *Kelly v. UHC Mgmt. Co.* (N.D. Ala. 1997) 967 F. Supp. 1240, 1245–1249 [failure to read agreement]; *Langere v. Verizon Wireless Servs., LLC* (C.D. Cal. Sept. 23, 2016, CV1500191DDPAJWX) [2016 WL 5346064, at *5] [failure to read agreement]; *Hicks v. Macy's Dept. Stores, Inc.* (N.D. Cal. Sept. 11, 2006, No. C 06-02345 CRB ) 2006 WL 2595941 at *2 [failure to opt out]; *Guerrero v. Equifax Credit Info. Servs., Inc.* (C.D. Cal.

Oliphant also cites to the decision in *Stinger v. Chase Bank, USA, NA* (5th Cir. 2008) 265 F. App'x 224 (*Stinger*), for the proposition that "[a]n arbitration agreement can be enforced even when a party claims to have never received the agreement." The facts from the *Stinger* opinion state that "when Chase sent Stinger his credit card for each account, it also sent him a Cardmember Agreement ('CMA') that established the terms of each account." (*Id*. at p. 225.) The fact that Chase sent the CMA to Stinger went unrebutted. But this is quite distinct from the present situation, where there is no evidence that Fleming was ever provided an agreement. (See *Berman v. Freedom Fin. Network, LLC* (9th Cir. 2022) 30 F.4th 849, 853 [district court properly denied defendant's motion to compel arbitration and stay proceedings pursuant to the FAA, 9 U.S.C. § 3, where terms of use containing arbitration provision were part of a browsewrap agreement; no evidence that plaintiff had actual notice of the terms of use or was required to affirmatively acknowledge them before completing his online purchase].) Oliphant seeks to turn the legal tables in this appeal, however, pointing to Fleming's actions as opposed to focusing on its own activity or inactivity. By doing so, Oliphant impliedly requests this Court to engage in a legal analysis that the Court of Appeal in *Chambers* prudentially declined to do, that is, evaluate the actions of Fleming before requiring a predicate showing that Oliphant sent the agreement to him.

Oliphant makes the additional argument that "Fleming's account statements clearly refer to the Cardmember Agreement and direct Fleming to his Cardmember Agreement for more information regarding his account." This argument possesses a few disconcerting aspects. Initially, Oliphant

Feb. 24, 2012) No. CV 11-6555 PSG PLAX) [2012 WL 7683512, *6] [failure to opt out].)

13

ignores the incongruity of suggesting that Fleming could have requested the Cardmember Agreement when there is no evidence of its existence, not to mention that no information reflects that either it or any of the proffered exemplars were actually ever transmitted to Fleming. Additionally, the only account statements provided to the trial court were for the years 2017 and 2018, which are well beyond 2013—when Fleming initially applied for the credit card—and did not contain the Cardmember Agreement. Further, no information is present in the record that earlier account statements, if any, included or even referenced the Cardmember Agreement. As a result, nothing in the record suggests that Fleming might have consented to the arbitration provision, the key issue in this appeal. (See Civ. Code, § 1565 [consent of the parties to a contract must be free, mutual, and communicated by each to the other].)

In sum, after considering all the grounds for relief raised by Oliphant, we conclude that Oliphant failed to meet its burden demonstrating the existence of a valid arbitration agreement.

## III.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Fleming is entitled to his costs on appeal.

DEVINE, J.[*]

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A165837P

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Santa Clara County Superior Court

Hon. Patricia M. Lucas

Kaufman Dolowich & Voluck, Katherine S. Catlos, Marcus Dong for Defendant and Appellant.

Consumer Law Center, Fred W. Schwinn, Raeon R. Roulston, Matthew C. Salmonsen for Plaintiff and Respondent.