SIDNEY R. HENDERSON AND PEGGY S. HENDERSON, HUSBAND AND WIFE, APPELLANTS, V. EDWARD P. FORMAN AND BARBARA J. FORMAN, HUSBAND AND WIFE, APPELLEES.

486 N.W.2d 182

Filed June 26, 1992.    No. S-89-1250.

Dennis L. Arfmann, of Nichols, Douglas, Kelly & Arfmann, P.C., and Francis L. Winner for appellants.

William P. Mueller and J. Blake Edwards, of McGinley, Lane, Mueller, O'Donnell & Reynolds, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is a civil suit in which the plaintiffs-appellants, Sidney R. and Peggy S. Henderson, seek damages allegedly resulting from defects in the roof and drainage system of a motel sold to them by the defendants-appellees, Edward P. and Barbara J. Forman. In their petition, the plaintiffs originally asserted

claims based upon breach of express and implied warranties and fraud.

The case was tried in the district court for Scotts Bluff County. The trial court directed a verdict in favor of the defendants at the close of the plaintiffs' evidence. On appeal, this court upheld the trial court's decision as to the breach of warranty claims, but reversed as to the fraud claims, holding that the alleged misrepresentations presented a triable issue for the jury. See *Henderson v. Forman*, 231 Neb. 440, 436 N.W.2d 526 (1989) (*Henderson I*).

Upon remand the defendants moved for a separate hearing on the statute of limitations issue. See Neb. Rev. Stat. § 25-221 (Reissue 1989). The trial court granted the motion and held an evidentiary hearing. Based upon evidence presented at the hearing, the trial court determined that the plaintiffs' claim concerning the roof was barred by the statute of limitations, but that the claim regarding the drainage system was not. After the trial court overruled their motion for a new trial, the plaintiffs perfected an appeal to this court.

## FACTUAL BACKGROUND

On June 29, 1980, the Hendersons signed a contract to purchase the Candlelight Inn and Lounge, a motel in Scottsbluff, Nebraska, from the Formans. Prior to signing the contract the Hendersons visited the premises several times. During one such visit in early June 1980, the Formans, the Hendersons, and a Realtor inspected the basement level of the motel. The Hendersons noticed that the wallpaper was wet and coming off the wall and asked the Formans about it. Edward Forman allegedly attributed the problems to a leaky ice machine and the inferior quality of the wallpaper glue, and assured them he solved the problem with the ice machine by attaching an extension hose and would arrange for the replacement of the wallpaper and glue.

Sidney Henderson and Forman also inspected a room containing some of the motel's mechanical equipment. Henderson asked Forman about a sump pump which he noticed was full of water. Forman admitted he did not know exactly how it worked, but told Henderson to be careful when

backflushing the pool or it would overflow. Either that same day or the next, Henderson asked Forman if there were any problems with water in the basement. Forman allegedly stated that a drainage system installed around the perimeter of the motel would keep the basement dry.

Henderson and Forman also ascended the roof of the motel. Henderson testified that when he asked about the condition of the roof, Forman responded that it was "in good shape, there were no problems." Henderson also testified that when Forman mentioned making some minor repairs to the roof, Henderson asked for and received permission to return with the repairman who did the work and make a further inspection. Forman testified that he told Henderson the roof was "marginal" and needed work.

Henderson and the repairman, Forrest Rose, Sr., subsequently examined the roof. Rose told Henderson that the roof was old and probably needed to be replaced. When Henderson reported Rose's comments to Forman, Forman allegedly stated that Rose was just looking for work and again assured Henderson that the roof was in good shape. Still uneasy, Henderson contacted another roofer, Charlie Schank, who looked at the roof and concluded that it was "solid." A friend of Forman's who Forman said "knew something about roofs" also looked at the roof and told Henderson it looked fine. Finally, in response to Henderson's inquiry, the Realtor told Henderson that he assumed the roof was all right.

Following a severe hailstorm in June 1982, the Hendersons noticed some leaks in the hallway and discoloration of the ceilings in some of the rooms. Henderson and Forrest Rose, Jr., went up on the roof to survey the storm damage and noticed that water was "ponding." Rose built up the center of the roof in an attempt to cause the water to run off, but told Henderson that the work was merely a "patch job" and that the roof needed major repairs and possibly replacement. Henderson testified that he did not notice ponding on the roof prior to the hailstorm of June 1982.

Problems associated with the roof became more severe in December 1983. Several of the ceilings began to bow and a few even collapsed under the weight of the water leaking in. Because

repairs were needed, the Hendersons called their insurance company, which in turn hired an engineer to determine the cause of the problems. The engineer examined the interior structures of the roof and concluded that it was defectively designed. He testified that the joists used to support the roof were too small and spaced too far apart, causing the roof to sag. He also noted that the roof was improperly ventilated, resulting in deterioration of the materials used to construct it. Based upon these conclusions, the insurance company denied coverage and informed the Hendersons of its position in early April 1984. Henderson testified that prior to that time he had no idea the roof was defectively designed. The Hendersons filed their petition against the Formans on April 3, 1986.

## ASSIGNMENTS OF ERROR

The Hendersons argue that the trial court erred in (1) finding that the limitation period began to run from the time of the alleged misrepresentation rather than from the discovery of the fraud, or, alternatively, (2) finding that the Hendersons should reasonably have discovered the fraud prior to April 2, 1982.

## JURISDICTION

Before addressing the merits, this court must raise on its own motion the question of jurisdiction over this appeal. See *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991). The jurisdictional question in this case concerns whether the trial court's order barring the Hendersons' action regarding the roof, but not regarding the drainage system, constitutes an appealable, final order.

In the absence of a judgment or order finally disposing of a case, an appellate court is without jurisdiction to act and therefore must dismiss the purported appeal. Neb. Rev. Stat. § 25-1911 (Reissue 1989); *Wicker v. Waldemath*, 238 Neb. 515, 471 N.W.2d 731 (1991). Generally, an order is final if it disposes of the whole merits of the case and leaves nothing for further consideration by the court. *Id.* When substantial rights of the parties to an action remain undetermined and the cause is retained for further action, the order is not final. *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990).

In *P. R. Halligan Post 163 v. Schultz*, 212 Neb. 329, 322

N.W.2d 657 (1982), this court held that an order dismissing one theory of recovery, while a second theory arising out of the same cause of action remains pending for trial, is not an appealable, final order. A single cause of action is presented in this case. The Hendersons seek to recover damages arising from a contract of sale on the grounds of fraud. Two separate instances of alleged fraud are pled, one involving Forman's statements concerning the condition of the roof and the other involving his representation as to the effectiveness of the underground drainage system. It is difficult to conceive of any theory that would allow separate or successive actions to recover based on each single act. Under any reasonable construction only one cause of action is pled. Therefore, the trial court's order barring the Hendersons' action as it relates to the roof only is not a final order, and this court must dismiss the appeal.

However, because this case will have to be retried, we observe that the limitations period applicable to a tort action for fraud is 4 years. Neb. Rev. Stat. § 25-207(4) (Reissue 1989). The 4-year period is deemed to accrue upon discovery of the fraud. *Id*. As used in reference to a statute of limitations, "discovery" occurs when an individual acquires knowledge of a fact which existed but which was previously unknown to the discoverer. *Broekemeier Ford v. Clatanoff, ante* p. 265, 481 N.W.2d 416 (1992). In the context of a fraud action, the limitations period begins to run upon

> "discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery. If the fraud or mistake ought to have been discovered, the statute will run from the time such discovery ought to have been made. . . ."

*Id*. at 273, 481 N.W.2d at 421, quoting *Lee v. Brodbeck*, 196 Neb. 393, 243 N.W.2d 331 (1976).

Here, the trial court held that the Hendersons should have discovered the facts supporting their claim regarding the roof prior to April 2, 1982. The court reasoned that "[d]iscussions with roofers, [Henderson's] personal inspections of the roof, experience with leaks, and ready access to discover the

structural support for the roof, (either from physical examinations, or from the plans for the building), all lead to that conclusion."

The trial court obviously found that Henderson's conversation with Forrest Rose, Sr., in June 1980 should have put the Hendersons on inquiry notice of the roof's defects. This is the position taken by the Formans in their brief as well. Such an approach represents a misapplication of the discovery rule relating to fraud actions.

To recover in an action for fraud based upon a misrepresentation of fact, the plaintiff must prove that

"(1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made with the intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage."

*Broekemeier Ford, ante* at 271, 481 N.W.2d at 420, quoting *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 421 N.W.2d 766 (1988). In this case, Henderson testified that he would not have entered into the contract as written had he known of the roof's defects. In other words, had they known the true nature of the roof, the Hendersons would have either not entered the contract at all or done so on terms reflecting the true condition of the premises. Thus, the act which the Hendersons performed in reliance on the alleged misrepresentations was entering into the contract, and the damage caused was payment of an inflated price.

With this background in mind, it becomes apparent that the cause of action relating to the roof did not "accrue" at the time of Henderson's conversation with Rose. This conversation occurred approximately 2 weeks prior to the signing of the contract on June 29, 1980. A cause of action cannot "accrue" before occurrence of all the elements which constitute a defendant's violation of a plaintiff's judicially protected right. See *Givens v. Anchor Packing*, 237 Neb. 565, 466 N.W.2d 771

(1991) (Shanahan, J., dissenting). Reliance on the alleged misrepresentations and damage resulting therefrom are necessary elements of a cause of action for fraud. *Broekemeier Ford, supra*. At the time of Henderson's conversation with Rose, the Hendersons had not yet decided whether to enter into the contract and thus lacked any reason to sue the Formans. It cannot be said that their cause of action for fraud accrued at that point.

As we noted in *Henderson I*, Henderson's conversation with Rose is relevant to the issue of whether the Hendersons *reasonably relied* on Forman's assurances in entering into the contract. Whether the Hendersons relied upon these assurances at all, and if they did whether such reliance was reasonable in the face of Rose's warning, are questions of fact. Resolution of these questions does not relate to the statute of limitations, but to whether the fraud occurred in the first place.

APPEAL DISMISSED.

BOSLAUGH, J., concurs in the result.