# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3556
_____

COR Clearing, LLC

*Plaintiff - Appellant*

v.

Calissio Resources Group, Inc.; Signature Stock Transfer, Inc.; TD Ameritrade
Clearing, Inc.; National Financial Services, LLC; Scottrade, Inc.; E-Trade
Clearing, LLC

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: December 13, 2018
Filed: March 13, 2019
_____

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[*] District
Judge.
_____

LOKEN, Circuit Judge.

---

[*]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

On June 16, 2015, Calissio Resources Group, Inc., an issuer of penny stock engaged in foreign mining activities, announced a first-ever quarterly dividend of 1.1 cents per share, payable August 17 to holders of issued and outstanding Class A common stock on June 30. In this action, COR Clearing, LLC, a securities clearing and settlement firm, seeks to recover losses resulting from this dividend transaction that it has not already recovered in other proceedings. COR accuses Calissio, its president, Adam Carter, and its stock transfer agent, Signature Stock Transfer, Inc. (SST), of fraud, and asserts claims of conversion and unjust enrichment against other securities intermediaries.[1] Carter was not served and did not appear; the district court[2] entered default judgment against Calissio. Following extensive discovery, applying Nebraska law, the court concluded that material facts are not in dispute and granted summary judgment dismissing all claims against SST and the Broker Defendants. COR Clearing, LLC v. Calissio Resources Group, Inc., No. 8:15CV317, 2017 WL 5157607 (D. Neb. Nov. 6, 2017). COR appeals the fraud, conversion, and unjust enrichment rulings.[3] Reviewing the grant of summary judgment *de novo*, we affirm. See Klaers v. St. Peter, 942 F.2d 535, 537 (8th Cir. 1991) (standard of review).

---

[1]TD Ameritrade Clearing, Inc.; National Financial Services LLC; Scottrade, Inc.; and E-Trade Clearing, LLC. (collectively, the Broker Defendants). A "securities intermediary" is "(i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." Neb. Rev. Stat. (U.C.C.) § 8-102(14).

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

[3]COR does not appeal the grant of summary judgment dismissing an unjust enrichment claim against SST, nor is the default judgment against Calissio at issue.

# I. Background

The claims at issue arise out of the complex, largely automated procedures used by securities intermediaries to implement transactions in our heavily regulated securities markets, including the payment of dividends declared by publicly held companies. The entire process is premised on an indirect holding system in which participants track transactions as "book entries," rather than physically trading certificates, bonds, and other securities instruments.

When Calissio announced a large dividend to be paid on August 17 to holders of record on June 30, the rules of the Financial Industry Regulatory Authority ("FINRA"), a non-governmental rule-making organization, governed how the dividend would be paid through book entries in securities intermediaries' investor accounts. In the usual case, FINRA determines the "ex-dividend date" -- the date on and after which a security is traded without a declared dividend -- to be on or before the record date. However, in the case of a large cash dividend, such as in this case, FINRA typically postpones the ex-date until the dividend payment date. See Silco, Inc. v. United States, 779 F.2d 282, 283-84 (5th Cir. 1986). In such cases, the automated system must take into account purchases and sales of shares between those two dates. In that interim, "a security, when sold, carries with it from the seller to the buyer the right to receive a distribution," a right known in the industry as a "due bill." In re Arctic Glacier Int'l, Inc., 2016 WL 3920855, at *6 (Bankr. D. Del. July 13, 2016), aff'd, 255 F. Supp. 3d 534 (D. Del. 2017); see Karathansis v. THCR/LP Corp., No. CIV. 06-1591 (RMB), 2007 WL 1234975, at *4 (D.N.J. Apr. 25, 2007), aff'd sub nom. In re THCR/LP Corp., 298 F. App'x 120 (3d Cir. 2008).

The Depository Trust and Clearing Corporation ("DTC") is a Security and Exchange Commission-approved central clearinghouse for the vast majority of shares listed on public markets. When shares are sold after the record date but before the ex-date, DTC credits purchasers with the dividend and debits sellers by crediting and

-3-

debiting the DTC accounts of intermediaries such as COR and the Broker Defendants, who in turn credit and debit the accounts of their investor clients. Though now fully automated, those credits and debits are still called due bills.

In this case, issuer Calissio fixed the record date of June 30. FINRA determined the "ex-dividend date" as August 19, after the August 17 payment date. Between those dates, important, abnormal events took place. First, two holders of Calissio convertible promissory notes, Nobilis and Beaufort ("N&B"), converted the notes to equity, resulting in Calissio issuing over 400 million new common shares to N&B. DTC identifies each issue of shares using a nine-digit alphanumeric "CUSIP" number. At Calissio's instruction, the new shares were issued to N&B with the same CUSIP number as existing shares, despite the fact that the new shares were not eligible to receive the declared dividend because they were issued after its record date. DTC uses CUSIP numbers to automatically allocate dividend disbursements to the intermediary accounts of eligible shareholders.

N&B brought their newly-issued ineligible shares to market by depositing them with their broker, J.H. Darbie & Co ("Darbie"), before the dividend ex-date. COR as a clearing and settlement firm maintains custody of securities and assets and records trades between brokers. Darbie was a COR broker client. After reviewing their eligibility, COR cleared and deposited at least 340 million new shares into its account with the DTC, permitting them to be publicly traded. Because the new shares had the same CUSIP number as existing Calissio shares, the dividend-ineligible new shares became indistinguishable from eligible existing shares on the DTC clearinghouse platform.

Before the August 19 ex-date, N&B sold their new shares to public buyers who purchased through brokers and traders. Like COR, the Broker Defendants are clearinghouses that connect brokers to the DTC platform. When investors purchased N&B's new Calissio shares through brokers maintaining accounts with one of the

-4-

Broker Defendants, like COR they entered the transactions into the DTC. Because the new Calissio shares had the same CUSIP number as existing shares, DTC's automated system treated post-record date new shares the same as pre-record date shares. Thus, on August 17, the dividend payment date, DTC attached due bills to the ineligible new shares sold by N&B before the ex-date. Calissio paid out $298,000, which presumably was distributed to the accounts of 27 million dividend-eligible shareholders -- roughly 20% of all Calissio shares on deposit. But the DTC due bills debited COR's account some $3.7 million for dividends attributable to N&B's sales of ineligible new shares through their broker Darbie. At the same time, the Broker Defendants, whose account holders purchased the N&B shares, were credited $3,737,466.18 and passed those credits on to their account holders. COR debited the accounts of N&B through broker Darbie, only to discover that Calissio had not paid dividends on ineligible shares, so the debits were unfunded.

To recover its loss, COR launched simultaneous efforts against various parties, in addition to suing Calissio and SST for fraud. COR froze N&B's accounts with Darbie, recovering roughly $700,000 from each. COR obtained an arbitration award of $2,236,000 against Nobilis but has not recovered that amount. Following arbitration, Darbie settled with COR, paying $500,000 and agreeing to indemnify another $1.7 million pending the results of COR's other suits. COR attempted to obtain "post-payable adjustments" to the credits and debits under DTC rules, but the district court denied COR's motion to appoint a receiver, a decision COR does not appeal. COR then filed an amended complaint adding claims against the Broker Defendants for conversion and unjust enrichment and seeking imposition of a constructive trust. Ruling on cross motions for summary judgment following extensive discovery, the district court granted summary judgment dismissing all claims against SST and the Broker Defendants.

## II. COR's Fraud Claim Against SST

COR alleges that SST as Calissio's transfer agent participated in Calissio's fraud by knowingly issuing post-record date shares under the same CUSIP number, "signaling to DTC that the new shares were entitled to the special dividend." To recover on a claim of fraudulent misrepresentation under Nebraska law, COR must prove that SST made a representation of a material fact knowing it to be false when made, or made a positive assertion recklessly without knowledge of its truth; that SST intended that COR rely on the misrepresentation; and that COR in fact relied on the misrepresentation and harm resulted. See, e.g., Henderson v. Forman, 486 N.W.2d 182, 186 (Neb. 1992); deNourie & Yost Homes, LLC v. Frost, 854 N.W.2d 298, 311-12 (Neb. 2014). The district court concluded that COR failed to establish that any material misrepresentations to the public could be imputed to SST, or that COR reasonably relied on any material misrepresentation by SST. We agree.

SST served as Calissio's transfer agent, an independent intermediary that facilitated public securities transactions by performing tasks such as issuing certificates, disbursing dividends, maintaining ownership records, and distributing proxy voting materials. When N&B converted promissory notes to equity after the Calissio dividend record date, SST reviewed an issuance resolution and attorney opinions to confirm the shares were "free trading," as COR also concluded. Then, following Calissio's instruction, SST issued the new shares with the same CUSIP number as pre-record date shares. We have difficulty identifying any representation made by SST, much less a materially false representation.

COR alleges that by posting N&B's new shares with the same CUSIP number as existing, unrestricted shares, SST knew that DTC would issue due bills on the mistaken understanding the new shares were eligible for the declared dividend. Even if that theory would support a claim of fraud, COR cites no evidence in the record, and we have found none, establishing that SST actually knew that erroneous due bills

would result if it followed its client's CUSIP instruction.[4]  With no knowledge of a misrepresentation lurking in the use of a seemingly appropriate CUSIP number for additional shares of the same class as existing shares, SST reasonably relied on attorney opinion letters in issuing the new shares.  See SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1259 (9th Cir. 2013) (transfer agents that "issued large quantities of shares without a restrictive legend after receiving two attorney opinion letters" not liable for unlawful distribution of unregistered securities); Geiger v. SEC, 363 F.3d 481, 487 (D.C. Cir. 2004) ("not everyone in the chain of intermediaries . . . is sufficiently involved in the process to make him responsible for an unlawful distribution"); Nielsen v. Adams, 388 N.W.2d 840, 846 (Neb. 1986) (if "defendant had a reasonable basis to believe that the statement of fact was true, then recovery will be denied").

We further agree with the district court that COR failed to show it reasonably relied on SST's alleged misrepresentation.  Unlike SST, COR is regulated by FINRA and was obligated to undertake its own review of share conversion documents.  FINRA Regulatory Notice 09-05 (Jan. 2009) advises that "FINRA, the SEC and the courts have repeatedly held that firms cannot rely on . . . transfer agents, issuers, or issuer's counsel to discharge their obligations to undertake an inquiry."  Here, COR undertook its own investigation before depositing N&B's new Calissio shares in COR's DTC account for public trading, possessing the same information as SST.  Thus, as the district court concluded, COR's asserted reliance "is wholly unreasonable, given the facts open to [its] observation and [its] own skill and experience." deNourie, 854 N.W.2d at 314.

---

[4]In early August, SST worked with DTC to distribute dividend payments to eligible Calissio shareholders.  Even if SST learned then that DTC would mistakenly treat N&B's new shares as dividend eligible, those shares were already being publicly traded, and there is no evidence that due bill debits would have been avoided.

For these reasons, we affirm the grant of summary judgment dismissing COR's fraud claim against SST.

### III. COR's Claims Against the Broker Defendants

COR appeals the dismissal of two claims against the Broker Defendants. First, COR alleged the common law tort of conversion -- that the Broker Defendants wrongfully "exercised dominion" over COR's property when DTC erroneously transferred funds from COR's account to the Broker Defendants' accounts, using due bill debits and credits. Second Amended Complaint ¶¶ 109-110. Second, COR alleged that the Broker Defendant were unjustly enriched by retaining the benefits of the due bill transfers. Id. at ¶¶ 101-105.

**A. The Conversion Claim.** Under Nebraska law, "conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Polley v. Shoemaker, 266 N.W.2d 222, 225 (Neb. 1978). "The plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion." Zimmerman v. FirsTier Bank, N.A., 585 N.W.2d 445, 451 (Neb. 1998). "[T]he essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." Terra Western Corp. v. Berry & Co., 295 N.W.2d 693, 696 (Neb. 1980).

COR asserts that DTC's erroneous transfer of funds from COR's account with DTC to the Broker Defendants' accounts was wrongful conversion of COR's property. The district court granted summary judgment dismissing this claim:

> COR has not established the elements of a conversion claim. The evidence shows that the brokers did not have possession, dominion, or control over the payments on the due bill credits. It is undisputed that the DTC assessed and allocated the due bill credits and the brokers immediately credited the payments to their customers or clients, the

purchasers of [new Calissio] shares. Under the Nebraska U.C.C. property interests in financial assets held by a securities intermediary are held by the securities intermediaries 'for the entitlement holders,' and 'are not property of the securities intermediary.' Neb. Rev. Stat. (U.C.C.) § 8-503(a). Further, the brokers' possession of the assets was fleeting. Also, COR has not shown that it had any right to immediate possession of the due bills at issue.

COR Clearing, LLC, 2017 WL 5157607, at *10. We agree.

To demonstrate why COR has no claim for conversion, we find it helpful to begin by disregarding the intermediaries. DTC concluded that N&B sold shares of Calissio stock to public investors, misrepresenting that the shares included the right to a future dividend. When the ex-date arrived and the right did not exist, DTC -- the private organization making the rules for this marketplace -- declared that the sellers owed the buyers the value of the dividend they paid for but did not receive. In this hypothetical, because both buyers and sellers had accounts in the market platform, DTC could implement its own remedy by taking money out of N&B's accounts and putting it in the buyers' accounts. This action might be the basis of a claim by the sellers for conversion by DTC, though the claim would surely fail. But the sellers would have no claim that the *buyers* converted property of the sellers by receiving payments that made the buyers whole for the sellers' misrepresentation. A villain has no conversion claim against a victim for property paid or transferred to remedy the villain's misconduct. No wrongful exercise of dominion occurred.

The answer does not change when we insert securities intermediaries into the equation. COR represented the N&B sellers and brought the new Calissio shares to the DTC market. The Broker Defendants represented the buyers. Both sides maintained accounts in the DTC platform. Thus, when DTC determined that the sellers must reimburse buyers who paid for the nonexistent right to a future dividend, DTC could implement its remedy with book entry debits and credits to the

intermediaries' accounts, transfers known in the industry as due bills. Again, COR might have a claim against DTC, akin to the common law cause of action for conversion, for DTC's action in debiting COR's account for the buyers' benefit. This no doubt would have been the subject of the receivership proceeding COR sought but the district court denied. However, COR has no conversion claim against the securities buyers who received DTC credits to remedy the N&B sellers' misconduct, on whose behalf COR acted.

Even more evident, COR has no conversion claim against the Broker Defendants, who simply acted as pass-through agents of the buyers in receiving and distributing due bill credits. See Restatement (Second) of Torts § 230 (AM. LAW INST. 1965). As in Platte Valley Bank v. Tetra Fin. Grp., LLC., "[r]ather than underhanded or wrongful, the actions [COR] challenges in this appeal were consistent with the purposes of [the Nebraska Uniform Commercial Code]." 682 F.3d 1078, 1087 (8th Cir. 2012). Moreover, just as the Broker Defendants were obligated to pass the due bill credits through to their clients, COR had the right to look to its clients, the N&B sellers, for reimbursement of due bill debits for nonexistent dividends they sold but buyers did not receive -- a right COR fully exercised in proceedings against N&B. Of the $3.7 million that COR was debited, it has recovered $1.9 million from Darbie and Darbie's N&B accounts, $1.7 million of additional indemnification if it does not recover from other parties, and an arbitration award of $2,236,000 against Nobilis. We agree with the district court that COR failed to prove the elements of common law conversion as a matter of law.[5]

---

[5]Given our resolution of this claim, we need not address whether DTC "due bills" are intangible property which may be the subject of an action for conversion under Nebraska law. The parties have not briefed this issue, and its answer is far from self-evident. See D. Dobbs, The Law of Torts § 63 (2001). Nor need we decide whether the Broker Defendants are entitled to immunity from conversion liability under sections 8-115 and 8-502 of the Nebraska Uniform Commercial Code. "This case can be decided on conversion without addressing any other provisions of the

**B. The Unjust Enrichment Claim.** The district court dismissed COR's claims against the Broker Defendants for unjust enrichment, explaining at length why COR "has not established that the brokers received or retained any property rightfully belonging to [COR] nor have they shown that, if they had, the brokers 'in justice and fairness' should pay it to COR." COR Clearing, LLC, 2017 WL 5157607, at *11. For reasons already explained, we agree. The Broker Defendants received due bill credits from DTC for the benefit of their account holders and passed the benefit to their account holders without delay. That alone defeats a claim of unjust enrichment. See Kanne v. Visa U.S.A., Inc., 723 N.W.2d 293, 302 (Neb. 2006). Moreover, the Broker Defendants' account holders -- purchasers of Calissio new shares -- were not *unjustly* enriched by receiving due bill credits to remedy the N&B sellers' misconduct in misrepresenting that the shares were dividend eligible.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____

code." PWA Farms, Inc. v. N. Platte State Bank, 371 N.W.2d 102, 105 (Neb. 1985); see Mandolfo v. Mandolfo, 796 N.W.2d 603, 609 (Neb. 2011).