**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  April 28, 2023
Date Decided:  May 18, 2023

Kevin R. Shannon, Esquire
Jaclyn C. Levy, Esquire
Callan R. Jackson, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, Delaware 19801

Seth Goldman, Esquire
Jacob H. Hupart, Esquire
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022

Elena C. Norman, Esquire
Mary F. Dugan, Esquire
Skyler A. C. Speed, Esquire
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
1000 North King Street
Wilmington, Delaware 19801

Deborah S. Birnbach, Esquire
Jennifer Burns Luz, Esquire
Matthew White, Esquire
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210

Samuel T. Hirzel, II, Esquire
Kelly E. Rowe, Esquire
HEYMAN ENERIO GATTUSO
& HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, Delaware 19801

Adam C. Ford, Esquire
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, New York 10016

RE:  *Gregory J. Parseghian v. Frequency Therapeutics, Inc., et al.*
    C.A. No. N22C-08-153 PRW CCLD
    Defendants' Motion to Dismiss

Dear Counsel:

    This Letter Order resolves Defendants Frequency and Computershare's

Motion to Dismiss the Complaint.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gregory J. Parseghian and Christine M. Parseghian are trustees of two respective trusts (collectively, the "Trusts").[2] The Trusts hold stock in Frequency Therapeutics, Inc. ("Frequency"), a biotechnology company.[3] The Trusts were early investors in Frequency before it became a public company.[4] When it became a public company, the Trusts' Series A preferred stock was transferred to common stock.[5]

Frequency selected Computershare, Inc.'s wholly-owned subsidiary Computershare Trust Company, N.A. ("Computershare") to serve as "Frequency's corporate transfer agent and provide a suite of investor services."[6] One of Computershare's duties as transfer agent was "to register transfers of securities."[7] The "records and accounts of [the Trusts'] shares [in Frequency] were maintained

---

[1]  Computershare and Frequency both moved to dismiss the complaint and submitted a joint opening brief in support of their motions.  D.I. 12, D.I. 13.

[2]  Compl. at 1 (D.I. 1).

[3]  *Id.* ¶ 1.

[4]  *Id.* ¶ 22.

[5]  *Id.* ¶¶ 28-29.

[6]  *Id.* ¶¶ 1, 9, 31.

[7]  *Id.* ¶ 31.

by Computershare."[8]

Due to a rise in the stock price, the Trusts decided to sell their shares in Frequency.[9] To affect this sale, on February 2, 2021, the Trusts contacted Computershare and instructed it to "transfer the [Trusts'] Frequency shares to their respective accounts at J.P. Morgan."[10]

The Trusts allege that over the next seven weeks Computershare hindered the Trusts' attempt to transfer their shares thus prohibiting them from reaching J.P. Morgan, the broker that was needed to effectuate the sale. The Trusts assert that Computershare informed them that the account names at J.P. Morgan did not match the account names at Computershare.[11] The Trusts say they fixed the issues (which they insist were caused by Computershare's own notation errors) but that Computershare continued to decline to approve the transfer requests.[12]

After seven weeks of attempts—and on the day Frequency's stock price

---

[8] *Id.* ¶ 60.

[9] *Id.* ¶¶ 57-61.

[10] *Id.* ¶ 61.

[11] *Id.* ¶¶ 65, 77-78. In addition to the names not matching exactly, the Trusts assert that Computershare claimed a 'transfer of death' notation on the Trusts' Computershare accounts "made it possible that J.P. Morgan was attempting to transfer shares to an account held for different people" and so it prohibited the transfer. *Id.* ¶¶ 77-78.

[12] *Id.* ¶¶ 79-81.

plummeted (March 24, 2021)—the Trusts say Computershare finally approved the transfer. [13]

According to the Trusts, Computershare's actions were the result of a coordinated campaign between Frequency and Computershare to prohibit or delay Frequency stockholders from transferring their shares to brokerages so as to prohibit increased sales activity.[14] This, it says: (1) allowed the stock price to artificially increase; and (2) allowed Frequency executives to sell their stock at those artificially higher prices.[15] In support, the Trusts point to Frequency's CEO selling over 350,000 shares of Frequency stock between February 1, 2021 and March 1, 2021.[16]

In the Complaint, the Trusts pen four claims: breach of the statutory duty of care against Frequency and Computershare, jointly and severally (Count I); negligence against Frequency and Computershare, jointly and severally (Count II);

---

[13]  *Id.* ¶¶ 80-81.

[14]  *Id.* ¶¶ 89-91.

[15]  *Id.* ¶¶ 89-91, 95 ("The only other plausible explanation, alleged here in the alternative, is that Frequency, with the goal of causing delay, communicated and/or refused to cooperate with Computershare in order to procure the delay of the transfer of the Plaintiffs' shares to J.P. Morgan and prevent their subsequent sale until after Frequency announced the negative news regarding its Phase 2a study. Frequency and its management knew that announcement spelled the end of its share value. As a result of their actions and omissions, the Defendants converted the Plaintiffs' shares and unjustly enriched Frequency."); *id.* ¶ 89 (asserting Frequency wanted to give "management time to profit by selling their shares of the company, while other shareholders could not").

[16]  *Id.* ¶ 91.

conversion against Frequency and Computershare, jointly and severally (in the alternative to Counts I and II) (Count III); unjust enrichment against Frequency and Computershare, jointly and severally (in the alternative to Counts I and II) (Count IV).[17]

Defendants have moved to dismiss the Complaint under Superior Court Civil Rules 12(b)(6) and 9(b).

## II. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), '[t]he legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.'"[18] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[19]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery,

---

[17]  *Id.* ¶¶ 96-163.

[18]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (alteration in original) (quoting Super. Ct. Civ. R. 12(b)(6)).

[19]  *Id.* (alteration in original) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

the motion must be denied."[20]  This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[21]

Under this Court's Rule 9(b), averments pleading negligence "shall be stated with particularity."[22]  This means, to satisfy Rule 9(b), a negligence claim must state "(1) what duty, if any, was breached; (2) who breached it; (3) what act or failure to act breached the duty; and (4) the party upon whom the act was performed."[23]

## III. DISCUSSION

### A. COMPUTERSHARE WAS NOT A SECURITIES INTERMEDIARY FOR THIS TRANSACTION AND THUS THOSE STATUTORY DUTIES IMPOSED ON SECURITIES INTERMEDIARIES DO NOT APPLY HERE (COUNT I).

In Count I, the Trusts assert that Computershare breached its statutory duty of care in violation of 6 *Del. C.* §§ 8-506, 8-507, and 8-508.[24]  The Trusts assert

---

[20]  *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[21]  *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004) (citation omitted).

[22]  Super. Ct. Civ. R. 9(b).

[23]  *Slade v. Carroll*, 2004 WL 440381, at *2 (Del. Super. Ct. Feb. 25, 2004) (citing *Myer v. Dyer*, 542 A.2d 802, 805 (Del. Super. Ct. 1987)).

[24]  Compl. ¶¶ 96-115.

Frequency is jointly and severally liable as Computershare was its agent.[25] Defendants assert Count I should be dismissed because Computershare is not a securities intermediary, so the statute does not apply to it.[26] The Trusts insist Computershare is a securities intermediary.[27]

The Trusts aver "Computershare maintained securities accounts for the Plaintiffs."[28] As proof for this assertion, the Trusts point to an April 2016 letter from Computershare to the United States Securities and Exchange Commission where it states "transfer agents are recordkeepers who record the shares held by registered securityholders on their recordkeeping system and *maintain the file* of registered holders[.]"[29]

That's not enough to impose the statutory liability the Trusts suggest. In this specific transaction Computershare was not a securities intermediary.

---

[25] *Id.* ¶ 103.

[26] Mot. to Dismiss at 13-14 (D.I. 13).

[27] Answering Br. at 18 (D.I. 18).

[28] Compl. ¶ 100; Answering Br. at 19.

[29] Compl. ¶ 100 (emphasis in original) (citing letter not included as an exhibit).

Six *Del. C.* §§ 8-506,[30] 8-507,[31] and 8-508[32] set out statutory duties imposed on securities intermediaries. Under 6 *Del. C.* § 8-102(a)(14), a securities intermediary is defined as:

> (i) a clearing corporation; or
> (ii) a person, including a bank or broker, that in the ordinary course of its business *maintains securities accounts* for others *and is acting in that capacity*.[33]

The Trusts do not allege that Computershare is a clearing corporation; instead they assert Computershare satisfies the second definition.[34] As stated in the official comments to the Uniform Commercial Code, "[s]ecurities intermediary means a person maintaining securities accounts for others."[35] And the official comments list common examples, such as "clearing corporations holding securities for their participants, banks acting as securities custodians, and brokers holding securities on behalf of their customers."[36] A securities account is "an account to which a financial

---

[30] DEL. CODE ANN. tit. 6, § 8-506 (2021) (duty of securities intermediary to exercise rights as directed by entitlement holder).

[31] DEL. CODE ANN. tit. 6, § 8-507 (2021) (duty of securities intermediary to comply with entitlement order).

[32] DEL. CODE ANN. tit. 6, § 8-508 (2021) (duty of securities intermediary to change entitlement holder's position to other form of security holding).

[33] DEL. CODE ANN. tit. 6, § 8-102(a)(14) (2021) (emphasis added).

[34] *See* Compl. ¶ 100; Answering Br. at 19.

[35] UNIFORM COMMERCIAL CODE tit. 6, § 8-102, official cmt. 14.

[36] *Id.*

asset is or may be credited in accordance with an agreement under which the person maintaining the account undertakes to treat the person for whom the account is maintained as entitled to exercise the rights that comprise the financial asset."[37]

This provision, which is adopted from the Uniform Commercial Code, "was intended to cover the relationship between institutional investors and their customers in which the former manages the latter's holdings."[38]

Separately, while 6 *Del. C.* § 8-407 does not define "transfer agent," it states:

> A person acting as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of a transfer of its securities, in the issue of new security certificates or uncertificated securities, or in the cancellation of surrendered security certificates has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions.[39]

Defined in the United States Code[40] and case law, a transfer agent is "an

---

[37]   DEL. CODE ANN. tit. 6, § 8-501(a) (2021).

[38]   *CAPM Corp. v. Protegrity, Inc.*, 2001 WL 1360122, at *8 (Del. Ch. Oct. 30, 2001); *see* UNIFORM COMMERCIAL CODE tit 6., § 8-501, official cmt. 1.

[39]   DEL. CODE ANN. tit. 6, § 8-407 (2021).

[40]   15 U.S.C. § 78c(a)(25) (2021)

> The term 'transfer agent' means any person who engages on behalf of an issuer of securities or on behalf of itself as an issuer of securities in (A) countersigning such securities upon issuance; (B) monitoring the issuance of such securities with a view to preventing unauthorized issuance, a function commonly performed by a person called a registrar; (C) registering the transfer of such securities; (D) exchanging or converting such securities; or (E) transferring record ownership of securities by bookkeeping entry without physical issuance of securities certificates. The term

independent intermediary that facilitate[s] public securities transactions by performing tasks such as issuing certificates, disbursing dividends, maintaining ownership records, and distributing proxy voting materials."[41]

The Trusts assert that Computershare maintains the file of the registered holders, and that this maintenance is synonymous with maintaining securities accounts for others and acting in that capacity.[42] It is not. Maintaining securities accounts and acting in that capacity "cover[s] the relationship between institutional investors and their customers in which the former manages the latter's holdings."[43] It does not cover the relationship between a company's transfer agent and the company's investors. While the transfer agent may be *an* intermediary, in the

---

'transfer agent' does not include any insurance company or separate account which performs such functions solely with respect to variable annuity contracts or variable life policies which it issues or any registered clearing agency which performs such functions solely with respect to options contracts which it issues.

[41] *COR Clearing, LLC v. Calissio Res. Gp., Inc.*, 918 F.3d 579, 584 (8th Cir. 2019); TRANSFER AGENTS, UNITED STATES SECURITIES AND EXCHANGE COMMISSION: FAST ANSWERS, https://www.sec.gov/fast-answers/answerstransferagent (last visited May 18, 2023) (stating that transfer agents perform three main functions: (1) "[i]ssue and cancel certificates to reflect changes in ownership," (2) "[a]ct as an intermediary for the company," and (3) "[h]andle lost, destroyed, or stolen certificates.").

Transfer agents have certain duties imposed on them by the SEC. *COR Clearing, LLC v. Calissio Res. Gp., Inc.*, 2017 WL 5157607, at *13 (D. Neb. Nov. 6, 2017) ("A transfer agent has duties imposed by the SEC to ensure the recording is accurate and can fulfill that duty by relying on corporate resolutions and attorney opinions."), *aff'd* 918 F.3d 579 (8th Cir. 2019).

[42] *See* Answering Br. at 19 ("The Complaint alleges Computershare maintains securities accounts for others." (citing Compl. ¶ 100)).

[43] *CAPM Corp.*, 2001 WL 1360122, at *8.

relationship described here, it is the corporation's intermediary.[44]

The Trusts assert that "Delaware law extends Frequency's liability for loss resulting from unreasonable delay or refusal to register [a] transfer to Computershare, as transfer agent."[45] Here, the Trusts cite to 6 *Del. C.* §§ 8-407 and 8-401(b) for that proposition.[46] But those provisions state only "[a] person acting as . . . transfer agent . . . has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions."[47] The Trusts brought Count I under 6 *Del. C.* §§ 8-506, 8-507, and 8-508, not 6 *Del. C.* § 8-407. So, to the extent they attempt to loop in an entirely different and unrelated statutory duty, Count I fails.

---

[44] TRANSFER AGENTS, UNITED STATES SECURITIES AND EXCHANGE COMMISSION: FAST ANSWERS, https://www.sec.gov/fast-answers/answerstransferagent (last visited May 18, 2023).

The Trusts say that the Court of Chancery's decision in *Ohrstrom v. Harris Tr. Co. of New York*, 1998 WL 8849 (Del. Ch. Jan. 8, 1998) supports the theory that an entity can hold multiple roles such as being both a securities intermediary and a transfer agent. Answering Br. at 19. But in *Ohrstrom*, Harris Trust was acting as the transfer agent and stock registrar for one entity and the exchange agent for the spin-off entity. 1998 WL 8849, at *1. It was not functioning as a securities intermediary. Separately, the Trusts assert the United States Court of Appeals for the Fourth Circuit's decision in *Mellon Investor Services, LLC v. Longwood County Garden Centers, Inc.*, 265 F. App'x 227 (4th Cir. 2008) is not applicable here because the facts of that case were different. Answering Br. at 20-21. But *Mellon* at least implies that a transfer agent cannot be a securities intermediary. 265 F. App'x at 281 n.9 ("Because the PFG shares were registered directly with [the corporation] rather than a securities intermediary like a brokerage firm, the direct holding system rules apply.").

[45] Compl. ¶ 110.

[46] *Id.*

[47] DEL. CODE ANN. tit. 6, § 8-407 (2021).

Accordingly, Computershare, in this instance, is not a securities intermediary. Thus Computershare could not have breached 6 *Del. C.* §§ 8-506, 8-507, and 8-508 here.[48]

Thus, the motion to dismiss Count I is **GRANTED**.

**B. THE COMPLAINT ASSERTS A WELL-PLED CLAIM FOR NEGLIGENCE (COUNT II).**

In Count II, the Trusts assert Computershare and Frequency committed negligence by failing to execute the Trusts' transfer instruction.[49]

In their Complaint, the Trusts assert that Computershare owed a duty to the Trusts as a bailee, and breached that duty by failing to "exercise reasonable care with respect to the property under the terms of the bailment."[50] And Computershare's failure to exercise reasonable care resulted in "loss or damage to the property."[51] Additionally, the Trusts assert Frequency is liable as Computershare's principal.[52]

---

[48] Frequency's liability here is dependent on Computershare's liability. Because Computershare could not have breached the statutory provisions at issue, Frequency cannot be jointly and severally liable for that now-dismissed claim.

[49] Compl. ¶¶ 116-32.

[50] *Id.* ¶ 121.

[51] *Id.*

[52] *See id.* ¶ 118.

In their answering brief, the Trusts assert (for the first time[53]) that Computershare breached a statutory duty under 6 *Del. C.* § 8-401 (applicable to transfer agents through § 8-407) to transfer securities without unreasonable delay; the Trusts say the 50 days it took Computershare to transfer the shares was unreasonable.[54]

The elements of negligence are: "duty, breach, causation, and harm."[55] Here, the Trusts seemingly assert two duty theories: common law bailment and 6 *Del. C.* §§ 8-401, 8-407.

"A bailment is defined as a delivery of personal property by one person, the bailor, to another, the bailee, who holds the property for a certain purpose, usually under an express or implied-in-fact contract."[56] "If a bailee returns the property in

---

[53] The Complaint mentions the applicable statute and states "Delaware law extends Frequency's liability for loss resulting from unreasonable delay or refusal to register transfer to Computershare, as transfer agent." *Id.* ¶ 110 (citing DEL. CODE ANN. tit. 6, §§ 8-401(b), 8-407). But that statute is mentioned as supporting only the statutory violation claim, not the negligence claim. *See id.* ¶¶ 116-32.

[54] Answering Br. at 27-28; *see* DEL. CODE ANN. tit 6, § 8-401(b) (2021) ("If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.").

[55] *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010) (citations omitted).

[56] *Devincentis v. European Performance, Inc.*, 2012 WL 1646347, at *4 (Del. Super. Ct. Apr. 17, 2012) (citing BLACK'S LAW DICTIONARY, 9th ed. 2009).

damaged condition, the plaintiff has a choice of remedies."[57]

Delaware has largely adopted Article 8 of the Uniform Commercial Code,[58] which includes a statutory duty for issuers to register transfers of securities without unreasonable delay.[59] And that duty is extended to transfer agents via 6 *Del. C.* § 8-407.[60] Accordingly, the statutory duty proscribed on issuers and transfer agents displaces common law negligence actions for the same conduct.[61] So the common law bailment theory of negligence fails.

But that does not doom the Trusts' negligence claim. While Computershare

---

[57] *Id.* (citing *Celanese Corp. of Am. v. Mayor and Council of Wilmington*, 78 A.2d 249, 250-51 (Del. Super. Ct. 1950)).

[58] *See* 71 Del. Laws ch. 75 (1997).

[59] DEL. CODE ANN. tit. 6, § 8-401(b) (2021).

> If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

Defendants argue there is no private right of action under 6 *Del. C.* §§ 8-506, 8-507, and 8-508. Mot. to Dismiss at 11-12 & n.6. But in this claim the alleged statutory duty breach can support a negligence cause of action.

[60] DEL. CODE ANN. tit. 6, § 8-407 (2021) ("A person acting as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of a transfer of its securities, in the issue of new security certificates or uncertificated securities, or in the cancellation of surrendered security certificates has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions.").

[61] *Kolber v. Body Cent. Corp.*, 967 F.Supp.2d 1061, 1068 (D. Del. 2013).

is not an issuer,[62] it is a transfer agent and 6 *Del. C.* § 8-407 extends liability for unreasonable delay in securities transfers to those operators.[63]

Defendants say the economic loss doctrine bars the negligence claim.[64] The Trusts counter that the economic loss doctrine does not apply because there is "no express contract governing Computershare's conduct with respect to Plaintiffs' shares."[65]

The economic loss doctrine is a judicially created doctrine that prohibits "plaintiffs from recovering in tort for losses suffered that are solely economic in nature."[66] "The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law."[67] At its core, the doctrine "prohibit[s] a plaintiff from bringing a tort claim 'where overlapping claims based

---

[62] Compl. ¶ 137 ("As a transfer agent, Computershare has the same obligation to the holder or owner of securities (the Plaintiffs) with regard to the particular functions performed as the issuer (Frequency) has in regard to those functions. 6 *Del. C.* § 8-407.").

[63] DEL. CODE ANN. tit. 6, § 8-407 (2021).

[64] Mot. to Dismiss at 29-30.

[65] Answering Br. at 35.

[66] *Christiana Marine Serv. Corp. v. Texaco Fuel and Marine Marketing*, 2002 WL 1335360, at *5 (Del. Super. Ct. June 13, 2002) (citing *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992)).

[67] *Brasby v. Morris*, 2007 WL 949485, at *6 (Del. Super. Ct. Mar. 29, 2007) (citation omitted).

in contract adequately address the injury alleged.'"[68] "But even where parties are connected in contract, a tort and contract claim might co-exist if 'the defendant breached a duty that is *independent* of the duties imposed by the contract.'"[69]

Defendants rely on *J.W. Walker & Sons, Inc. v. Construction Management Service, Inc.*[70] for the proposition that the Trusts' damages for diminution in share value "is quintessentially economic loss, and Plaintiffs may not recover in tort."[71] But in that case the negligence claim was based on contract.[72] Here there is no—pled or cognizable—contract or breach-of-contract claim.[73]

More simply, because a contract did not govern the specific relationship between the Trusts and Computershare the economic loss doctrine can't be invoked here.[74]

---

[68] *Khushaim v. Tullow, Inc.*, 2016 WL 3594752, at *4 (Del. Super. Ct. June 27, 2016) (quoting *Brasby*, 2007 WL 949485, *6).

[69] *Id.* (emphasis in original) (quoting *McKenna v. Terminex Int'l Co.*, 2006 WL 1229674, at *2 (Del. Super. Ct. Mar. 13, 2006)).

[70] 2008 WL 1891385, at *1 (Del. Super. Ct. Feb. 28, 2008).

[71] Mot. to Dismiss at 29.

[72] *J.W. Walker & Sons, Inc.*, 2008 WL 1891385, at *1 (Del. Super. Ct. Feb. 28, 2008).

[73] The two additional cases cited by Defendants apply New York law and are not helpful here. Mot. to Dismiss at 30 n.13 (citing *King County, Wash. v. IKB Deutsche Industriebank AG*, 863 F.Supp.2d 288, 302-04 (S.D.N.Y. 2012) & *NCUA Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F.Supp.3d 662, 687-89 (S.D.N.Y. 2019)).

[74] *See Council of Unit Owners of Sea Colony East, Phases III, IV, VI and VII Condo. on Behalf of the Ass'n of Owners v. Carl M. Freeman Assocs., Inc. et al.*, 1990 WL 177632, at *4 (Del. Super. Ct. Oct. 16, 1990) ("The decision reflected what is characterized as the Supreme Court's judgment

At this stage, the Trusts successfully plead a claim of negligence via a statutory duty imposed by 6 *Del. C.* §§ 8-401, 8-407.

Defendants say Computershare and Frequency are not in an agency relationship such that Frequency could be liable for Computershare's conduct.[75] The Trusts say that Computershare itself said it was Frequency's agent and made that representation to the SEC.[76]

"The determination of whether an agency relationship exists is normally a question of fact."[77] And "[t]he party asserting the agency relationship bears the burden of proving its existence."[78]

Here, the Trusts assert that Computershare was Frequency's agent and that Computershare held itself out as such.[79] As such, it has brought suit against

---

that economic loss 'is essentially the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law.'" (quoting *East River S.S. Corp. v. Transamerica Delavul, Inc.*, 476 U.S. 858, 870 (1986)).

[75] Mot. to Dismiss at 16-18.

[76] Answering Br. at 24-25 (citing Compl. ¶ 32).

[77] *Fisher v. Townsends, Inc.*, 695 A.2d 53, 61 (Del. 1997); *see WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1177 (Del. 2012) (finding that a contractual "right to control 'the overall management' of the assets" alone is not sufficient on the summary judgment record to find an agency relationship existed).

[78] *Baccellieri v. HDM Furniture Indus., Inc.*, 2013 WL 1088338, at *3 (Del. Super. Ct. Feb. 28, 2013) (citing *Wilson v. Pepper*, 1995 WL 562235, at *3 (Del. Super. Ct. Aug. 21, 1995)).

[79] Compl. ¶ 32.

Frequency for acts it asserts Computershare committed via that relationship.[80] To what extent Computershare was acting as Frequency's agent is to be determined at a later date with a fuller record. At this point the Trusts have met their minimal burden—whether that relationship *actually* existed is to be determined with facts not yet in the record.

Accordingly, the motion to dismiss Count II is **DENIED**.

## C. THE COMPLAINT ASSERTS AN ADEQUATE CLAIM OF CONVERSION (COUNT III).

In Count III, the Trusts allege, in the alternative to Counts I and II, that Computershare and Frequency converted the Trusts' shares by asserting "dominion and control over the[ir] property."[81]

"Conversion is 'any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it.'"[82] To successfully plead a conversion of stock claim, the Trusts must show they: (1) "held a property interest in the stock"; (2) "had a right to possession of the stock"; and

---

[80] *See id.* ¶¶ 96-163 (asserting Frequency and Computershare are jointly and severally liable for the claims made in the Complaint).

[81] Compl. ¶ 150.

[82] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (alteration in original) (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).

(3) that Computershare and/or Frequency converted the Trusts' stock.[83]

The tort of conversion requires intent, but it need not be "a subjectively wrongful intent."[84]

Defendants say the Trusts "have failed to plead an intentional wrongful act by either Computershare or Frequency evidencing an intent to permanently deprive them of their stock."[85] Defendants argue, instead, that the Complaint "allege[s] nothing more than that Computershare made a reasonable effort to work with Plaintiffs' broker to ensure that Plaintiffs' shares were not wrongfully transferred."[86]

Not so. The Complaint does, at this pleadings stage, sufficiently allege it was Computershare's intent to delay or stop the transfer of the Trusts' shares to J.P. Morgan. The Complaint's allegation that Computershare intentionally delayed the transfer—which, in the Trusts' belief, was done at Frequency's direction—is sufficient to survive this motion.[87] Whether the Trusts can prove their theory is to

---

[83] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (citing *Drug, Inc.*, 168 A. at 93-94).

[84] *Segovia v. Equities First Hldgs., LLC*, 2008 WL 2251218, at *19 (Del. Super. Ct. May 30, 2008) (quoting *IBM Corp. v. Comdisco, Inc.*, 1993 WL 259102, at *4 (Del. Super. Ct. June 30, 1993)).

[85] Mot. to Dismiss at 31.

[86] *Id.* (citing Compl. ¶¶ 61-75).

[87] Compl. ¶ 148 ("Frequency had the power to stop the transfer of shares and did so, both by its own actions and omissions, and through its transfer agent, Computershare.").

be determined, but the Trusts have alleged facts sufficient to put the Defendants "on notice of the claim being brought against it."[88]

Accordingly, the motion to dismiss Count III is **DENIED**.

**D. THE TRUSTS CANNOT SATISFY ALL ELEMENTS OF THEIR UNJUST ENRICHMENT CLAIM AGAINST THE NAMED DEFENDANTS (COUNT IV).**

In Count IV, the Trusts assert (in the alternative to Counts I and II) that Frequency and Computershare jointly and severally unjustly enriched themselves at the expense of the Trusts.[89]

"Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[90] To bring a claim for unjust enrichment "a plaintiff must show[:] (1) gain by one party; (2) loss by another; (3) that the gain and loss are related; (4) that the first party has retained the gain without justification; and (5) the absence of a remedy at law."[91] The burden is on the plaintiff to show the *prima facie* elements of its unjust enrichment claim are met.[92]

---

[88] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (citations omitted).

[89] Compl. ¶¶ 155-63.

[90] *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (citation and internal quotation marks omitted).

[91] *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *50 (Del. Ch. Dec. 3, 2018) (citing *Nemec v. Shrader*, 991 A.2d, 1120, 1130 (Del. 2010)).

[92] *See CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, 2008 WL 2586694, at *4 (Del.

Even if one were to assume all other elements are met, the Trusts have not successfully pled that Frequency or Computershare were enriched.

The Trusts suggest that "Frequency was enriched when the Defendants prevented the Plaintiffs from selling their holdings between February 2, 2021, and March 24, 2021, without justifiable cause[,]"[93] because the delay "artificially limited the supply of Frequency shares available for purchase, at least in part causing Frequency's share price to rise."[94] In their answering brief, the Trusts assert this temporary stock increase can constitute an enrichment.[95] The Trusts then turn to *In re Galena Biopharma, Inc. Derivative Litigation*.[96] But in *Galena Biopharma*, the Oregon federal district court (applying Delaware law) found an enrichment because the "Selling Defendants sold their stock and received a benefit and allowing them to retain that benefit would go against fundamental principles of justice, equity, or good conscience."[97]

---

Super. Ct. June 6, 2008).

[93] Compl. ¶ 158.

[94] *Id.* ¶ 15; *id.* ¶ 158 ("The addition of the Plaintiffs' 71,688 shares to those available to be purchased would have reduced demand for the shares, lowering the price. . . . Frequency's actions helped to artificially sustain Frequency's high share price.").

[95] Answering Br. at 39.

[96] 83 F.Supp.3d 1047, 1067-68 (D. Or. 2015).

[97] *Id.* at 1068.

Additionally, the Trusts rely on the Court of Chancery's *In re HealthSouth Corp. Shareholders Litigation*[98] decision to say that Frequency's and its CEO's benefit was an enrichment satisfying the first element of unjust enrichment.[99] But there, the enrichment was to the *defendant* directors and officers who allegedly personally benefited from selling stock.[100] Here, Frequency's CEO is not a defendant—he was removed when this case pended in the Court of Chancery.[101]

The only well-pled enrichment the Trusts claim is to the CEO.[102] Accordingly, the Trusts have not carried their burden to show they have met all *prima facie* elements of their unjust enrichment claim. So that claim fails on that basis alone.

But there's more. The claim fails too because—unlike what the Trusts suggest here—a temporary stock increase *itself* is not an enrichment. If a party uses the alleged temporary stock increase for some subsequent benefit, then the latter could

---

[98] 845 A.2d 1096, 1106 (Del. Ch. 2003), *aff'd*, 847 A.2d 1121 (Del. 2004).

[99] Answering Br. at 40.

[100] *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d at 1106 ("It seems obvious that the plaintiffs have proven that the Buyback unjustly enriched [HealthSouth CEO] Scrushy.").

[101] *Parseghian as trustee of Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *7 (Del. Ch. June 21, 2022).

[102] Answering Br. at 38 ("Frequency's CEO David Lucchino was selling off his own shares and earning over $10.5 million in the process" (citing Compl. ¶ 91)). At oral argument the Trusts asserted that Frequency owned its own stock, but this fact is missing from the Complaint. Even if this statement were included in the Complaint, as explained below, it would still fail.

be called an enrichment, but that is not the situation here.[103]  The Trusts allege only that the temporary increase *itself* was an enrichment to Frequency; they do not allege that *Frequency* took any action on account of or in response to the stock increase. And the complained-of situation cannot be repeated—the Trusts do not allege the stock is currently trading at an artificially higher price, and the Trusts' Frequency shares are in their respective J.P. Morgan accounts.[104]

Accordingly, the Trusts have failed to plead the necessary elements of their unjust enrichment claim and so the Motion to Dismiss Count IV is **GRANTED**.

### IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss Counts I and IV is **GRANTED**, and Defendants' Motion to Dismiss Counts II and III is **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

---

[103] This is not like *Ryan v. Gifford* where the Court of Chancery found the retention of a (potentially unexpired) option even without executing it could constitute an enrichment.  918 A.2d 341, 361 (Del. Ch. 2007).  Here, the Trusts don't argue that Frequency's alleged possession of its stock constitutes an enrichment.  Nor could they.  Instead, they argue that a temporary (unrealized) increase to that stock price constituted the enrichment itself.

[104] *See Ryan*, 918 A.2d at 361 ("Further, defendants make no allegations that Gifford is precluded from exercising these options or that the options have expired."); *see Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 342 (Del. Ch. 2022) ("Smith currently possesses the right to receive shares under the Challenged Grants."); *Weiss v. Swanson*, 948 A.2d 433, 450 (Del. Ch. 2008) ("Nothing suggests that the defendants are prevented from exercising their options once they fully vest.").